## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 08 2015, 8:35 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Bradley J. Buchheit
Tucker Hester Baker & Krebs, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Stephen E. Schrumpf
Peter G. DePrez
Shelbyville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jens Thogerson,

*Appellant-Plaintiff,*

v.

Millennium Trailers, Inc.,

*Appellee-Defendant.*

October 8, 2015

Court of Appeals Case No.
73A01-1503-MF-113

Appeal from the Shelby Circuit
Court.
The Honorable Charles D.
O'Connor, Judge.
Cause No. 73C01-1008-MF-129

**Shepard, Senior Judge**

[1]     Five years into the lawsuit Jens Thogerson filed against his former employer, Thogerson has yet to produce the documents that underlie his claims or those of the employer's countersuit, as directed multiple times by Judge Charles O'Connor and mediator Theodore Boehm.

Judge O'Connor finally concluded that this was not a failure to produce, but rather a refusal. He dismissed Thogerson's complaint, entered a default against him on the counterclaims, and heard evidence on damages. We affirm.

## Issues

Thogerson raises two issues, which we restate as:

I.  Whether the trial court abused its discretion in entering the default, and

II. Whether the court's award of damages to Millennium is supported by the evidence.

## Facts and Procedural History

Millennium Trailers, Inc., sells custom trailers, and about eighty percent of its business is generated online. It uses a database program to organize customer information, including contact information and records of its interactions with customers. Potential customers are automatically entered into the database when they visit Millennium's website and provide their contact information. The program assigns new entries, or "leads," to Millennium's sales staff for follow-up. Salespersons are authorized to edit entries as needed to reflect their interactions with customers. In early 2010, the database contained over 19,000 entries.

Thogerson worked for Millennium as a salesperson from September 1, 2009, to May 27, 2010. He was paid on commission and sold fifty-six trailers for Millennium.

[6]     About five months into his employment with Millennium, Thogerson started his own trailer sales company, Custom Trailer Solutions, LLC (CTS). Like Millennium, CTS generates most of its business through online contacts. Thogerson sold trailers to seven customers through CTS while he worked for Millennium. He found leads for CTS using Millennium's customer data.

[7]     For example, Millennium's records indicate that Thogerson spoke with Ross Larson on February 2, 2010, as a Millennium salesperson. On February 5, Thogerson sold Larson a trailer, as owner of CTS. On February 10, he made a notation on Millennium's database that there was "nothing [he] could do" because Larson had purchased a trailer elsewhere. Defendant's Ex. D.

[8]     As another example, the day after Thogerson quit Millennium, a man named Morgan Brown called Millennium to ask when his trailer would be ready. Millennium's chief financial officer, William Mrozinski, learned that Brown had purchased a trailer through CTS. Mrozinski had never heard of that company and did not understand why Brown had called Millennium. He telephoned Thogerson, who denied speaking with Brown or knowing anything about CTS.

[9]     Mrozinski examined the Indiana Secretary of State's database of registered businesses and discovered that Thogerson was CTS's founder. When Mrozinski called Thogerson again, Thogerson admitted "he had taken four other names from our database, and that he would make restitution for what he had taken from us." Tr. p. 59.

[10] Thogerson later admitted during responses to discovery that Millennium's database had provided him with Brown's contact information as a possible lead and that he had sold a trailer to Brown through CTS without Millennium's knowledge. Thogerson also admitted that he altered Brown's information in Millennium's database so that Millennium could not contact Brown.

[11] CTS continued to operate, and Thogerson was its chief salesperson. From February 2010 to July 2013, CTS sold trailers to 185 customers listed in *Millennium's* customer database.

[12] In August 2010, Thogerson sued Millennium, demanding payment of commissions. Millennium counterclaimed, alleging conversion of proprietary information, breach of fiduciary duty, and disclosure of trade secrets.

[13] Millennium sent Thogerson requests for discovery. Thogerson sought and received two extensions of time to respond. Meanwhile, the court directed the parties to mediation and appointed Theodore Boehm as mediator.

[14] In September 2011, Millennium sent a letter to Thogerson, noting that he had provided incomplete responses to nine of its requests for production of documents. Among other requests, Millennium asked for CTS's records of trailer sales from September 1, 2009 onward, Thogerson and CTS's cell phone and telephone records from the period when he worked for Millennium, and correspondence between Thogerson or CTS and trailer manufacturers during the time he worked for Millennium.

[15] Two months went by. In November 2011, Millennium filed a motion to compel, asking the trial court to order Thogerson to respond fully to its requests for production. In response, Thogerson moved for a protective order. During a hearing in December 2011, the parties told the court they had reached an agreement on the discovery dispute. The parties agreed that Thogerson could submit his discovery responses to Boehm. Appellant's App. p. 52. Millennium's lawyer prepared a proposed joint order reflecting the parties' agreement, but neither Thogerson nor his lawyer ever signed it. *Id.*

[16] The following spring, in April 2012, Millennium again moved to compel, asserting that Thogerson had breached the agreement by failing to provide discovery to the mediator. The trial court granted the motion, directing Thogerson to give the documents to Boehm.

[17] Thogerson requested an extension, and on May 15, 2012, the court declared: "[Thogerson] shall have 5 days from the date of this order to submit responsive documents." *Id.* at 6. On May 23, 2012, Thogerson filed a "Certificate of Compliance," certifying that the documents the court ordered Thogerson to produce had been sent to the mediator. *Id.* at 56.

[18] On June 28, 2012, the parties met with Boehm, and Thogerson admitted he had not given the mediator the requested documents, and the certificate of compliance had been false. *Id.* at 60, 68. Boehm sent the parties a letter in which he directed Thogerson to "provide a list of [CTS] revenue generating transactions from inception to current date, identifying the customer, date and

amount" on or before July 11. *Id.* at 67. Thogerson did not comply with this directive.

[19] In October 2012, Millennium filed a Verified Motion for Discovery Sanctions. Another three months went by. Thogerson had still not produced documents.

[20] As the lawsuit moved into its fourth calendar year, on January 23, 2013, the trial court conducted a hearing on the request for sanctions.

[21] The court granted Millennium's motion, noting that "no documents have been produced" and that Thogerson "acknowledged sanctions were appropriate and asked that they be in the form of a monetary assessment." Appellant's App. p. 68. Judge O'Connor rejected Thogerson's request, having concluded that Thogerson's actions were actually a "refusal to comply." *Id.* He noted Thogerson's repeated failure to follow directives from the court and the mediator, and the false certification, which the court characterized as "egregious conduct." Appellant's App. p. 70. As a result, the court dismissed Thogerson's complaint with prejudice, entered a default judgment against him as to Millennium's counterclaims, and scheduled a hearing to address Millennium's damages and monetary sanctions for Thogerson's noncompliance.

[22] More than two months later, on April 1, 2013, Thogerson's new lawyer moved to set aside the sanctions, saying that new counsel was "passingly familiar" with the actions that had led up to them. Appellant's App. p. 71. This would have been a propitious moment to show up with the evidence in question. It

was not to be. Counsel neither tendered any documents nor said anything in his motion about complying with Thogerson's discovery obligations should the motion be granted. The court denied Thogerson's motion and scheduled a bench trial on damages.

[23] The court held a trial on Millennium's counterclaims and issued an order with findings of fact and conclusions of law on February 18, 2014, assessing damages for conversion and breach of fiduciary duty. Thogerson filed a motion to correct error. The trial court granted the motion and scheduled a new bench trial on damages. After the new trial, the court entered judgment to Millennium for the $4,400 in profit it lost on each of the 185 trailers Thogerson sold to Millennium customers, plus $100,000 in exemplary damages, and $1,000 in attorney fees. This appeal followed.

# Discussion and Decision

## I. Discovery Sanctions

[24] Thogerson argues that the trial court should not have denied his motion to set aside default. The case was not fully adjudicated when Thogerson filed the motion, so the issue is really whether the court erred by issuing discovery sanctions in the form of dismissing Thogerson's complaint and entering default against him on Millennium's counterclaims.

[25] If a party fails to obey an order to provide or permit discovery, a trial court may impose sanctions, including "An order . . . dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient

party." Ind. Trial Rule 37(B)(2).  In addition, the court "shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure." *Id.*

[26] Trial courts possess wide discretion in dealing with discovery matters, and we review a court's decision regarding discovery sanctions only for an abuse of discretion. *Prime Mortg. USA v. Nichols*, 885 N.E.2d 628 (Ind. Ct. App. 2008); *accord*, *Noble Cnty. v. Rogers*, 745 N.E.2d 194 (Ind. 2001).

[27] Thogerson argues that the trial court's dismissal of his complaint and entry of default on Millennium's counterclaims was unjust because the court did not first warn him that his noncompliance could result in those outcomes.  It is well established that a court is not required to impose lesser sanctions prior to applying sanctions like dismissal or default. *Hatfield v. Edward J. DeBartolo Corp.*, 676 N.E.2d 395 (Ind. Ct. App. 1997), *trans. denied*.  While explicit warnings about particular sanctions play a role in evaluating whether a trial court exercised appropriate discretion, at the heart of the matter is whether the offending party was afforded time to comply and understood that sanctions could follow for continuing failure to perform. *See Prime Mortg.*, 885 N.E.2d at 649.

[28] The record demonstrates that Thogerson repeatedly defied court orders and mediator requests over a period of several years.  Initially, Thogerson received two extensions of time to respond to Millennium's discovery requests, and despite the extensions did not provide appropriate answers to nine requests for

production. After Millennium filed its first motion to compel, Thogerson represented to the trial court in December 2011 that he had reached an agreement with Millennium and would turn over the documents to Boehm. Thogerson did not produce any documents.

[29] Next, when Millennium filed a second motion to compel five months later, the trial court granted the motion. After requesting and receiving a five-day extension of the deadline, Thogerson filed a false certification with the trial court stating that he had turned over the documents to Boehm.

[30] When the parties met with Boehm one month later, and Thogerson admitted that he had not turned over any documents, Boehm issued a letter directing Thogerson to again produce the documents, with a deadline of July 11. Once again, Thogerson did not.

[31] Thogerson says that his noncompliance was his former attorney's fault. He argues that he should not be penalized for his lawyer "going rogue." Appellant's Br. p. 17. Of course, appellate courts regularly say that a client is bound by his attorney's actions. *See, e.g.*, *Weinreb v. TR Developers, LLC*, 943 N.E.2d 856 (Ind. Ct. App. 2011) (affirming denial of motion for relief from judgment over claim that failure to respond to motion for summary judgment was prior counsel's fault, not attributable to client), *trans. denied*.

[32] To be sure, trial courts and appellate courts are reluctant to come down too hard on clients, despite our regular recitation that they are bound by the acts of counsel. Still, Thogerson is now on his third set of lawyers over five years, and

as Judge O'Connor said, "no documents have been produced." Appellant's App. p. 68. The second lawyers and the third lawyers have done nothing concrete to make good on Thogerson's long-standing obligations, though avenues for doing so exist. Thogerson says he did not know much about his first lawyer's actions, which can occur, but the case record demonstrates that he has known about his obligation to produce for at least thirty months, to no effect.

[33] Based on Thogerson's repeated noncompliance with the trial judge and mediator's orders over a good number of years, and his attempt to deceive the court by filing a false certificate of compliance, we cannot conclude that the court's sanctions were an abuse of discretion. *See Prime Mortg.*, 885 N.E.2d at 650 (affirming entry of default judgment as a discovery sanction where defendant repeatedly failed to comply with orders regarding discovery and submitted a false document to the court).

[34] Touching a point from Trial Rule 60 about setting aside defaults, Thogerson says he had a meritorious claim for unpaid wages and a meritorious defense to Millennium's counterclaim for theft of a trade secret. Thogerson's repeated and willful noncompliance rendered it impossible for the trial court to address the merits of his claims. Furthermore, with respect to Millennium's counterclaims, the trial court entered judgment on all three counterclaims (theft of a trade secret, conversion, and breach of fiduciary duty). Thus, even if Thogerson had

a valid defense to one of the counterclaims, the trial court's judgment is still supported by the remaining two.[1]

## II. Evidence to Support Damages Award

[35] Thogerson challenges the damages award, but he does not cite to any authorities or critique any of the evidence heard by the trial court. As a result, he has waived the claim for appellate review. *See Dickes v. Felger*, 981 N.E.2d 559 (Ind. Ct. App. 2012) (challenge to evidentiary ruling waived when appellant failed to cite to authority or discuss the record).

[36] Indeed, Thogerson does not contest the trial court's calculations. Instead, he says that if the default is set aside and the case tried on the merits, the evidence will point to a judgment in his favor.

[37] Both the trial judge and the mediator committed years to efforts at discovering ahead of time what evidence Thogerson and this three sets of lawyers might have in mind.

# Conclusion

[38] For the reasons stated above, we affirm the judgment of the trial court.

---

[1] In any event, there is ample evidence to support a conclusion that Millennium's customer database, which was built over time using a program purchased by Millennium and established over 19,000 privately-held customer entries, constituted a trade secret as set forth in Indiana Code section 24-2-3-2 (1993). *See Amoco Prod. Co. v. Laird*, 622 N.E.2d 912 (Ind. 1993) (a survey of potential petroleum fields, which took a great deal of time and effort to develop, was a trade secret).

Affirmed.

Vaidik, C.J., and Bradford, J., concur.